**GOLDBERG, MILLER & RUBIN P.C.**
**BY:** **Matthew Moroney, Esquire**
      **Harlan Schreiber, Esquire**
      **1501 Broadway, Suite 715**
      **New York, NY 10036**
      **(215) 735-3994**

*Counsel for Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company*
*State Farm Guaranty Insurance Company and State Farm Fire and Casualty Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INDEMNITY COMPANY, STATE FARM GUARANTY INSURANCE COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY | Docket: 1:23-cv-3644-DG-RER |
| Plaintiffs, | **AMENDED COMPLAINT** |
| -against- | |
| NYC MEDICAL TREATMENTS, P.C. | |
| Defendants. | |

Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company (collectively, "State Farm Companies" or "Plaintiffs"), by and through their counsel, Goldberg, Miller & Rubin, P.C., hereby allege as follows:

**NATURE OF THE ACTION**

1.    This is an action for a declaratory judgment in which the State Farm Companies seek a determination that they are not legally obligated to pay certain bills submitted by the Defendant, NYC Medical Treatments, P.C. ("NYC Medical") for highly questionable services that

allegedly were rendered to individuals who were involved in automobile accidents and eligible for coverage under insurance policies issued by the State Farm Companies in New York. As described below, the claims are not compensable because NYC Medical is/was not owned and controlled by a licensed physician as required by law and because it failed to comply with licensing requirements. Moreover, at least some of the claims are not compensable because the services billed for were provided by independent contractors as opposed to employees as required by law. Additionally, because NYC Medical failed to provide necessary information to properly verify the claims it submitted, NYC Medical failed to meet a condition precedent to coverage under the insurance contracts and violated its obligations under New York's No-Fault Laws, and therefore, the claims are not compensable. The claims at issue in this declaratory judgment action are identified on **Exhibit "A".**

## PARTIES

2.  The State Farm Companies are corporations organized under the laws of Illinois with a principal place of business in Illinois. The State Farm Companies are duly authorized to issue automobile insurance policies in the State of New York.

3.  NYC Medical is a New York professional service corporation. According to its bills, NYC Medical claims that its owner is Michael Jacobi, D.O. ("Jacobi"). NYC Medical's principal place of business is located at 218-02 to 218-08 Hempstead Avenue, Queens, New York ("Hempstead Clinic"). At all relevant times, NYC Medical submitted claims and bills to the State Farm Companies for highly questionable treatment and testing services that were purportedly administered to individuals who were involved in motor vehicle accidents.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this claim because the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

5. Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because a substantial part of the events giving rise to the claims occurred here.

**I.      An Overview of the No-Fault Laws**

6. The State Farm Companies underwrite automobile insurance in the State of New York.

7. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.) (collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to insureds.

8. No-Fault Benefits include up to fifty thousand dollars ($50,000.00) per insured for necessary expenses that are incurred for healthcare goods and services.  New York's No-Fault Laws are designed to ensure that individuals who are injured in motor vehicle accidents have an efficient mechanism to receive and pay for necessary health care services.

9. Under the No-Fault Laws, insureds can assign their right to No-Fault benefits to professional health service providers, as long as the providers meet applicable New York State and local licensing requirements to perform such services in New York.  With a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form approved by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician

or Other Provider of Health Service" or, more commonly, as an "NF-3"). Once the healthcare provider takes an assignment of an insured's rights, the provider cannot seek to recover payment from the insured. Instantly, the Defendants received assignments for the claims and bills at issue in this lawsuit.

10. Pursuant to the No-Fault Laws, health care providers that seek to collect No-Fault benefits from New York automobile insurers must be in compliance with all applicable New York licensing laws and must be owned and controlled by licensed health care providers.

11. In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals made clear that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law.

12. In Andrew Carothers, M.D., P.C. v. Progressive Ins. Co., 2019 N.Y. Slip Op. 04643 (June 11, 2019) the New York Court of Appeals reiterated that only licensed physicians may practice medicine in New York because of the concern that unlicensed physicians are "not bound by ethical rules that govern the quality of case delivered by a physician to a patient."

13. In New York, only a licensed healthcare professional may: (i) practice the pertinent healthcare profession; (ii) own and control a professional corporation authorized to operate a professional healthcare practice; (iii) employ and supervise other healthcare professionals; and (iv) absent statutory exceptions not applicable in this case, derive economic benefit from healthcare professional services.

14. Unlicensed individuals may not: (i) practice the pertinent healthcare profession; (ii) own or control a professional corporation authorized to operate a professional healthcare practice;

(iii) employ or supervise healthcare professionals; or (iv) absent statutory exceptions not applicable in this case, derive economic benefit from professional healthcare services.

15. In addition, healthcare service providers are not eligible to receive No-Fault Benefits if they engage in self-referrals, kickbacks, or other illegal payments in violation of New York's Public Health Law.  Healthcare providers are also not entitled to collect for healthcare services that are not medically necessary, are provided by independent contractors, and/or are based on illegitimate and/or fraudulent examinations/ testing services and/or the billed amounts are excessive.

II. **An Overview of New York's No-Fault Regulations Pertaining to Verification of Claims**

16. The No-Fault Laws obligate healthcare providers, which seek payment of No-Fault Benefits, to provide insurers with additional verification in order to establish proof of their claims.

17. The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 includes a specific section entitled "Conditions", which states in part, that "upon request by the Company, the eligible injured person or that person's assignee . . . shall (b) as may reasonably be required, submit to an examination under oath by any person named by the Company, and shall subscribe to same . . . , and (d) provide any other pertinent information that may assist the Company in determining the amount that is payable."

18. The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 also states that "No action shall lie against the Company, unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage."

19. The proof of claim requirement in the No-Fault policy endorsement, 11 N.Y.C.R.R. § 65-3.5(b) states in relevant part:

>Subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms. Any requests by an insurer for additional verification need not be made on any prescribed or particular form . . .

20. Additionally, 11 N.Y.C.R.R. § 65-3.5(c) states in relevant part:

>The insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested.

Moreover, 11 N.Y.C.R.R. § 65-3.5(o) states in relevant part:

>An applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply.

21. An insurer is entitled to any information that is necessary for the insurer to determine whether the claim submitted by the healthcare provider is payable. The issues for which additional verification can be properly sought are not limited to, and can include, for example:

(i) whether the healthcare provider is in compliance with licensing requirements;
(ii) whether the healthcare provider is truly owner and controlled by a licensed physician;
(iii) whether the services provided by the healthcare provider were medically necessary, and/or the billed amounts are excessive and/or whether the services were the product of self-referrals, kickbacks, or other inappropriate financial considerations and/or whether the services were provided by employees or independent contractors.

### III. Factual Allegations and the State Farm Companies' Reasonable Basis for Requesting Verification

22. Prior to seeking additional verification from NYC Medical, the State Farm Companies conducted an investigation into the claims submitted by NYC Medical. This review

included a survey of the records of numerous patients and investigating the appropriateness and legitimacy of the billed for services.

23. Based on this investigation, serious questions as to the appropriateness, necessity, and legitimacy of the services were identified, which justified the need for additional verification. These serious questions include a concern whether Jacobi truly owns and controls NYC Medical or if NYC Medical is/was owned or controlled by layperson(s) in violation of New York law. This layperson is Simon Davydov ("Davydov"), who is not a licensed healthcare provider.

24. As background, Davydov has a history of allegedly owning and controlling healthcare practices before the scheme at issue. GEICO filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:10-cv-04341 against Davydov. In that action, it was alleged that Davydov illegally owned and controlled healthcare practices at two (2) separate locations. As alleged in that lawsuit, Davydov, and his family members, attempted to conceal his true ownership and control through various fraudulent arrangements relating to management, billing, and collections work.

25. The scheme at the Hempstead Clinic included Jacobi, a chiropractor, Aleksandr Mostovoy, D.C. ("Mostovoy"), and an acupuncturist, who were all listed as owners of ostensibly separate corporations at the Hempstead Clinic, although they shared space, patients and staff.

26. Although Jacobi graduated from medical school in 2004, it took him ten (10) years to become licensed. Only three (3) months after he became licensed in 2014, Jacobi became purported owner of a medical office called Epione Medical, P.C. ("Epione") located at the Hempstead Clinic.

27. In 2018, GEICO filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:18-cv-03159. In that action, it was alleged that Davydov illegally owned

and controlled these healthcare providers, including Epione and the chiropractic and acupuncture entities, operating at the Hempstead Clinic. It was further alleged that Davydov "bought" the licenses of various healthcare professionals, including Jacobi, in order to incorporate multiple healthcare corporations, which were used to implement a fraudulent billing scheme to maximize profits without regard to proper patient care. It was also alleged that these healthcare providers billed for services that were not medically necessary and which were administered pursuant to a pre-determined protocol.

28. In 2021, Allstate filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:21-cv-03970. In that action, it was alleged that Epione was never eligible to collect No-Fault benefits because it was owned and controlled by Davydov and his family members. It was further alleged that these lay persons used their position of power to control patient care and maximize revenue by causing the healthcare providers to bill for an array of unnecessary treatment and testing services. It was also alleged that Epione billed for services that were rendered by independent contractors rather than employees.

29. After GEICO sued Epione and the chiropractic and acupuncture providers, these entities stopped operating at the Hempstead Clinic and were replaced by three (3) new professional corporations, which are NYC Medical, a new professional corporation that provided acupuncture services, and a new professional corporation that provided chiropractic services. When the change-over occurred, the office staff switched over to the new entities and the existing patients became the patients of these new professional corporations, including NYC Medical. It appears that this changeover was implemented after the scheme was exposed in an effort to induce insurers into paying bills under the representation that new and different entities were submitting bills. It appears that the only real change was new tax identification numbers to bill insurers.

30. As noted, the listed owner of these chiropractic entities that were located at the Hempstead Clinic is Mostovoy, who executed an affidavit under penalty of perjury, dated April 14, 2022.

31. Mostovoy's affidavit describes how Davydov controlled and operated the three (3) healthcare practices, including NYC Medical, operating at the Hempstead Clinic. As stated in Mostovoy's affidavit:

- Mostovoy was brought into the Hempstead Clinic by Davydov, who offered Mostovoy a turnkey chiropractic practice that centered on generating revenue from receiving reimbursements from no-fault insurance carriers located at the Hempstead Clinic.

- As part of that turnkey chiropractic practice, Davydov procured the patients, who were involved in motor vehicle accidents. These patients were shared with the other providers at the Hempstead Clinic.

- As part of that turnkey chiropractic practice, Davydov also purportedly provided practice management, record keeping, website creation and maintenance, and billing and collections services.

- The administrative staff at the Hempstead Clinic, who were controlled by Davydov and his spouse, directed new patients to be treated by all three (3) providers located at the Hempstead Clinic.

- After GEICO sued these providers, NYC Medical replaced Epione and new chiropractic and acupuncture companies replaced the ones sued by GEICO.

- Throughout his tenure at the Hempstead Clinic, Davydov, through entities owned or controlled by him and his family members (the "Davydov

Entities"), controlled the billing that was sent on behalf of Mostovoy's companies, along with the payments from carriers. As per Mostovoy, his involvement was limited to a cursory review of the outgoing bills generated by one of Davydov's company.

- Mostovoy stated that he was fraudulently induced into retaining services from the Davydov Entities, by entering into service agreements with the Davydov Entities.

- Mostovoy discovered that the Davydov Entities were charging his company the outrageous fees for the services that were never rendered.

- Mostovoy stated that the Davydov Entities charged these outrageous fees in order to obtain the majority of the billing reimbursement from insurance carriers made payable to his chiropractic companies.

- Mostovoy stated Davydov threatened him with physical injury when he confronted him with these issues. Davydov threatened Mostovoy to not return to the Hempstead Clinic or he would face physical injury.

- Even though Mostovoy's company purportedly had a valid sublease agreement to have access to the space at the Hempstead Clinic, he was locked out of the Hempstead Clinic by Davydov and was locked out of access to the patients and to their medical charts, files, and billing information.

- Mostovoy was also locked out of the chiropractic practice management and billing software license by Davydov, whereby losing access to patients' contact information and to their electronic medical charts, files, and billing information.

- Mostovoy stated that the sublease agreement to operate at the Hempstead Clinic was not legitimate as Davydov locked him out for not complying with his requirements.

- Mostovoy stated that Davydov controlled the professional corporations operating at the Hempstead Clinic because as soon as he objected to the structure put in place by Davydov, which were geared at funneling the insurance reimbursements to the Davydov Entities, he was locked out and removed.

**(See Exhibit "B" for Mostovoy's affidavit).**

32. As stated by Mostovoy, pursuant to the scheme implemented by Davydov, the majority of the billing reimbursement from insurance carriers was funneled to the Davydov Entities through a number of sham service agreements.

33. Like the chiropractic and acupuncture entities, NYC Medical was also required to pay tens of thousands of dollars per month to companies owned by Davydov and his family members for highly questionable, if not fictitious, services.

34. As stated by Mostovoy, Davydov controlled the professional corporations operating at the Hempstead Clinic. As soon as he objected to the structure put in place by Davydov, Mostovoy was removed and locked out.

35. Because NYC Medical was truly owned and controlled by a layperson, NYC Medical is ineligible to collect No-Fault Benefits, and therefore, the bills are at issue are non-compensable.

36. Not only are there serious concerns regarding whether NYC Medical is owned and controlled by lay persons including Davydov, but there are serious concerns regarding the

necessity of the services it has billed for. When the records from different patients are reviewed and compared, there appears to be patterns of unsupported diagnoses and unnecessary treatment and testing services, which would make these services non-compensable. Although three (3) ostensibly professional corporations shared the same patients and reportedly provided services to these patients on the same day and time, it does not appear that there was no coordination of care by these providers.[1] It also appears that patients were "treated" for many months, if not longer, without any documented benefit or improvement in the records as would be expected in a legitimate healthcare practice. It does not appear that patients are discharged nor are treatment plans modified in response to the lack of documented patient improvement as would be expected in a legitimate healthcare practice.

37. In addition, there are numerous healthcare providers who reportedly provided treatment and testing services, which are outside of Jacobi's specialty. These services include radiology, electrodiagnostic medicine and orthopedic surgery. These healthcare providers are also listed as employees of other professional corporations who render services to No-Fault patients, and which are business competitors of NYC Medical. Accordingly, it is questionable whether these healthcare providers are truly employees, as NYC Medical claims, or whether they are truly independent contractors. Any and all services billed by NYC Medical that were administered by independent contractors are non-compensable.

38. Because of these troubling issues described above, the State Farm Companies requested that NYC Medical provide documents to verify its submitted claims. In spite of this,

---

[1] In 2019, GEICO filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:19-cv-04414. In that action, it was again alleged that Davydov illegally owned and controlled the healthcare entities at the Hempstead Clinic, including NYC Medical. It was further alleged that Davydov was using NYC Medical to prescribe fraudulent prescriptions filled at his pharmacy, Wellmart Rx, Inc.

NYC Medical has failed to provide all of the requested records. These records include records concerning work scheduling, the scope of practice, medical supervision, direction of medical care, billing practices and procedures, scope of employment or independent contractor relationship, or compensation of alleged employees of NYC Medical, along with employee files, and records in which a patient was discharged and/or determined to have reached maximum medical improvement and/or determined that the patient no longer needs treatment within 60 days of his or her initial visit – which is a necessary request that explores the necessity of the billed for services.

**IV.    Defendant's Failure to Comply with the State Farm Companies' Requests for Additional Verification**

39.     The State Farm Companies made formal requests for additional verification to Defendant in connection with the claims listed on **Exhibit "A"**. These requests were made in accordance with the insurance policies under which the claims were submitted, and pursuant to the No-Fault Laws.

40.     Each request was timely made and based upon the application of objective standards justifying the information sought by the State Farm Companies that would address the concerns summarized above and would allow the State Farm Companies to properly evaluate the claims.

41.     In spite of this, NYC Medical failed to provide all of the requested documents.

42.     The failure and/or refusal to provide additional verification constitutes a material breach of the State Farm Companies' insurance policies and the No-Fault Laws under which the claims have been made and, as such, relieves the State Farm Companies from any obligation to pay Defendant on any of the claims.

43. In each instance where NYC Medical refused to provide proper verification, the State Farm Companies issued a timely denial on the prescribed NF-10 form stating in relevant part that the Defendant failed to comply with their obligation to present a proper proof of claim, and that the Defendant's claim was denied because it failed to satisfy a condition of coverage.

44. All of the State Farm Companies' denials of Defendant's bills/claims and charges were timely, proper, and consistent with the No-Fault Laws. The chart annexed hereto as **Exhibit "A"** identifies each claim where verification was requested by the State Farm Companies.

### FIRST CAUSE OF ACTION
### Against NYC Medical
### (Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202)

45. Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 44 of this Complaint as if fully set forth at length herein.

46. There is an actual case in controversy between the State Farm Companies and Defendant regarding more than $595,000 in billing for healthcare services that has been submitted to the State Farm Companies. The claims in dispute are listed on **Exhibit "A"**.

47. Defendant has no right to receive payment for any of the claims listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and therefore, breached a condition of coverage and violated its obligations under the No-Fault Laws.

48. Accordingly, the State Farm Companies request a judgment declaring that NYC Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and thus breached a condition of coverage and violated its obligations under the No-Fault Laws.

49. Defendant also has no right to receive payment for any of the claims listed on **Exhibit "A"** because it is not eligible to collect No-Fault Benefits. As described above, NYC

Medical is not compliance with all applicable New York licensing laws, is owned and controlled by a layperson, and at least some of its reported services were rendered by independent contractors and/or were not medically necessary.

50. Accordingly, the State Farm Companies request a judgment declaring that NYC Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it is not eligible to collect No-Fault Benefits because NYC Medical is not in compliance with all applicable New York licensing laws, is owned and controlled by a layperson, and at least some of its reported services were rendered by independent contractors and/or were not medically necessary.

**WHEREFORE**, the State Farm Companies respectfully request that this Court enter a declaratory judgment in their favor and against NYC Medical, as follows:

- On the First Cause of Action, a declaration that NYC Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A."**

### SECOND CAUSE OF ACTION
### Against NYC Medical
### (Declaratory Relief Under CPLR § 3001)

51. Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 50 of this Complaint as if fully set forth at length herein.

52. There is an actual case in controversy between the State Farm Companies and Defendant regarding more than $595,000 in billing for healthcare services that has been submitted to the State Farm Companies. The claims in dispute are listed on **Exhibit "A"**.

53. Defendant has no right to receive payment for any of the claims listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and therefore, breached a condition of coverage and violated its obligations under the No-Fault Laws.

54. Accordingly, the State Farm Companies request a judgment declaring that NYC Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and thus breached a condition of coverage and violated its obligations under the No-Fault Laws.

55. Defendant also has no right to receive payment for any of the claims listed on **Exhibit "A"** because it is not eligible to collect No-Fault Benefits. As described above, NYC Medical is not compliance with all applicable New York licensing laws, is owned and controlled by a layperson, and at least some of its reported services were rendered by independent contractors and/or were not medically necessary.

56. Accordingly, the State Farm Companies request a judgment declaring that NYC Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it is not eligible to collect No-Fault Benefits because NYC Medical is not compliance with all applicable New York licensing laws, is owned and controlled by a layperson, and at least some of its reported services were rendered by independent contractors and/or were not medically necessary.

**WHEREFORE**, the State Farm Companies respectfully request that this Court enter a declaratory judgment in their favor and against NYC Medical, as follows:

- On the Second Cause of Action, a declaration that NYC Medical has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A."**

Dated:  August 31, 2023

                Respectfully submitted,

                GOLDBERG, MILLER & RUBIN, P.C.

By: _____
                Matthew Moroney, Esq.
                Harlan Schreiber, Esq.
                *Counsel for Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company and State Farm Fire and Casualty Company*